COMMONWEALTH *vs.* WILLIAM N. SAYLOR.

No. 88-P-470.

Hampshire. November 16, 1988. — March 16, 1989.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Kidnapping. Extortion. Practice, Criminal,* Indictment, Amendment, View, Judicial discretion.

A criminal defendant demonstrated no prejudice from the pretrial allowance of the prosecutor's motion, pursuant to Mass.R.Crim.P. 4 (d), to amend the pending kidnapping indictment by deleting surplus language. [119-121]

A criminal defendant's motion for additional particulars with respect to language in the indictment that was properly deleted on the prosecution's motion to amend was correctly denied. [121]

The judge at the trial of a kidnapping indictment correctly declined to instruct the jury that the prosecution must prove that the defendant had a specific intent to confine the victim by force and against his will. [121-122]

At a criminal trial there was no abuse of discretion in the judge's permitting the jury to take a view. [122]

At the trial of indictments for kidnapping and extortion there was no error in the judge's denial of the defendant's motions for required findings of not guilty. [122-123]

A criminal defendant demonstrated no compelling reason for requesting an enlargement of the time within which to file a motion to suppress his statements, and there was no abuse of discretion in the judge's denial of the request. [123]

INDICTMENT found and returned in the Superior Court Department on June 27, 1985.

A motion to amend the indictment was heard by *John F. Murphy, Jr.,* J., and the case was tried before *John F. Moriarty,* J.

*Edward J. McMahon* for the defendant.

*Ariane D. Vuono,* Assistant District Attorney, for the Commonwealth.

KASS, J. Upon jury verdicts, the defendant William N. Saylor was convicted of kidnapping, extortion, and assault and battery.

In outline, these are the facts which the jury could have found. Henry Marcinowski, down on his luck, lived in his car in March, 1985. That vehicle's engine "seized up" and Marcinowski literally coasted into Hadley Foreign Auto Works, at which the defendant worked as a mechanic. The defendant diagnosed Marcinowski's car as beyond repair for any reasonable cost and told Marcinowski about a 1965 Chevrolet the garage had for sale for $400.

That proposition was of interest to Marcinowski, who said, however, that he could not be in funds until April 3, 1985, when his disability check was due to arrive. The defendant and the proprietor of the garage, William Podolak, allowed Marcinowski to camp in the Chevrolet automobile in the interim. After several days, Podolak told Marcinowski he could not stay at the garage anymore. Marcinowski embarked on foot for Northampton, a journey that took him by Freddie Ben-Ben's Gulf station, where fortune, not Marcinowski's usual companion, briefly smiled on him and produced a better deal, namely, a 1973 Ford for $300. Marcinowski bought the Ford when his check arrived on April 3.

Saylor and Podolak were greatly displeased with this turn of events, the more so as Marcinowski had covered the Chevrolet with car wax which he had not buffed. The wax had caked and made the car look white. On the evening of April 3, 1985, while Marcinowski was driving his newly acquired Ford, Podolak and Saylor cut him off and brought him to a stop. Saylor jumped into Marcinowski's car on the driver's side, made Marcinowski move over, grabbed the wheel, and drove to a secluded spot on the Connecticut River known as the Honey Pot.

While there, Saylor raged about Marcinowski buying a car from Freddie. Saylor demanded to know what Marcinowski proposed to do about the Chevrolet and threatened that he would drive the Ford into the river. There ensued a general reign of terror during which Saylor twice threw Marcinowski over a steep bluff into the river about fifteen feet (estimates

of the height of the river bank varied) below. Saylor tossed Marcinowski's possessions, including clothing, from the Ford and vandalized that car by pounding it with a piece of wood. Then he turned on Marcinowski again and asked if he had any money. Marcinowski had thirty dollars, of which Saylor grabbed twenty. As a parting shot, Saylor said, "If I ever catch you around my fucking garage, I'll kill you. Have a good night, Henry." Saylor took his leave with Podolak, who had been sitting by in another automobile.

1. *Matters relating to the indictment.* Three points which the defendant raises on appeal stem from the inclusion in the original indictment of a parenthetical clause "with intent to cause him to be held to service" appended to the main charge. That main charge, as set forth in the indictment, was that Saylor "did, without lawful authority, forcibly and secretly confine and imprison Henry F. Marcinowski within this Commonwealth against his will."[1]

Two weeks before trial, the Commonwealth moved to amend the indictment by deleting the clause "with intent to cause him to be held to service" on the grounds that the clause was surplusage. The defendant claims to have been prejudiced by the allowance of the motion to amend the indictment, but does not explain the nature of the prejudice, other than to observe, perhaps ruefully, that the Commonwealth lacked evidence to prove the indictment in its unamended form. If, as was established in *Commonwealth* v. *Dean*, 21 Mass. App. Ct. 175, 181-182 (1985), the clause "held to service against his will" could be dropped from the charge against the defendant at the jury instruction stage without constituting an unlawful variance, it follows that the phrase may be dropped from an indictment before trial — unless the defendant establishes that he was somehow misled. There has been no such showing here.

---

[1] The indictment contained three additional counts, a count for armed robbery (of which the defendant was acquitted), a count for extortion, and a count for assault and battery.

As amended, the indictment, which tracked the language of clause [1] of the statute as it is set out in the margin,[2] was consistent with a bill of particulars which the Commonwealth had furnished. The defendant, therefore, cannot say that he was in any fashion surprised by the evidence presented at trial. That evidence was responsive to the elements contained in clause [1]. The parenthetical clause, which the Commonwealth abandoned, is drawn from clause [3].

Amendments to indictments are authorized under Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979),[3] if not prejudicial to the defendant or the government. The cases require that the amendment to the indictment be without substance. *Commonwealth* v. *Snow*, 269 Mass. 598, 606-610 (1930). *Commonwealth* v. *Jervis*, 368 Mass. 638, 643-645 (1975). *Commonwealth·*v. *Sitko*, 372 Mass. 305, 308 (1977). *Commonwealth*

[2] General Laws, c. 265, § 26 (first sentence), as appearing in St. 1971, c. 900, reads in pertinent part as follows: "[1] Whoever, without lawful authority, forcibly or secretly confines or imprisons another person within this commonwealth against his will, or [2] forcibly carries or sends such person out of this commonwealth, or [3] forcibly seizes and confines or inveigles or kidnaps another person with intent either to cause him to be secretly confined or imprisoned in this commonwealth against his will . . . or in any way held to service against his will, shall be punished . . . ."

During the colonial era in Massachusetts, the definition and punishment for kidnapping were biblical: "If any man stealeth a man or man-kinde, he shall surely be put to death." Colonial Laws c. 15, § 10 (1672-1686). The phrase "held to service against his will" first appears in Rev. Sts. (1836) c. 125, § 20, and, as might be anticipated, was connected with the practices of slavery and other forms of involuntary servitude extant in the early Nineteenth Century. The 1836 formulation read: "or to be sold as a slave, or in any way held to service against his will." The statute also prescribed punishment for "every person, who shall sell, or in any manner transfer for any term the service or labor of any negro, mulatto, or other person of color, who shall have been unlawfully seized, taken, inveigled or kidnapped from this state . . . ." The phrase "sold as a slave" dropped away in Pub. Sts. (1882) c. 202, § 30, and the reference to the labor of a Negro, mulatto, or other person of color was deleted by St. 1931, c. 426 § 43. *State* v. *McLaren*, 135 Vt. 291, 295-296 (1977), examines language of the Vermont kidnapping statute (14 Vt. Stat. Ann. § 2401) which closely resembles G. L. c. 265, § 26, and reads "hold a person to service" as connoting the placing of the victim in involuntary servitude. *Ibid.*

[3] The statutory antecedent of rule 4 (d) was G. L. c. 277, § 35A, which was repealed by St. 1979, c. 344, § 35, when the rule was adopted.

v. *Saya*, 14 Mass. App. Ct. 509, 511 (1982). A test for what constitutes an insubstantial amendment is whether conviction or acquittal under the indictment as amended would bar, on double jeopardy principles, a prosecution based on the original indictment. *Commonwealth* v. *Snow, supra*, at 609-610. *Commonwealth* v. *Saya, supra*, at 511. The pruned indictment, in this case, describes an offense which would be subsumed in the more comprehensive original indictment. See *Brown* v. *Ohio*, 432 U.S. 161, 168-169 (1977); *United States* v. *Miller*, 471 U.S. 130, 136-137, 144-145 (1985).

What we have said about the propriety of dropping the "with intent to cause him to be held to service" language disposes of the defendant's grievance that his motion for additional particulars was denied. That motion asked for the manner in which the victim was to be held to service. With that element of the offense out of the case, the defendant cannot claim to be aggrieved by not having learned of the nonexistent particulars.

For similar reasons there is no occasion now to consider whether the original, unamended indictment lacked foundation in the grand jury proceedings on the "held to service" element.

2. *Instruction on specific intent.* Defense counsel requested the judge to charge the jury that they must find that the defendant had formed a specific intent to cause the victim to be confined against his will; i.e., the fact of the seizing and confining would not make out the crime unless it was accompanied by a purpose to accomplish that end. Complaints charging an attempt to commit a substantive crime, such as an attempt to kidnap, require proof that the defendant had a conscious design to achieve the felonious end. *Commonwealth* v. *Ware*, 5 Mass. App. Ct. 506, 508-509 (1977), *S.C.* 375 Mass. 118, 119 (1978). If the crime as defined includes the element of intent, as for example in clause [3] of G. L. c. 265, § 26 (see note 2), or in the case of extortion (see below), the prosecution ·must prove a specific intent on the part of the defendant. *Ibid.*

Clause [1] of § 26 — "[w]hoever, without lawful authority, forcibly or secretly confines or imprisons another person within this commonwealth against his will . . . shall be punished" —

states a crime which may be proved by objective facts concerning the use of force and confinement and does not require proving a specific criminal intent. See *Commonwealth* v. *Ware*, 375 Mass. at 120; *Commonwealth* v. *Dean*, 21 Mass. App. Ct. at 181-182. See also *Commonwealth* v. *Nickerson*, 5 Allen 518, 528 (1863). As the language of clause [1] constituted the kidnapping indictment after it had been amended, the trial judge correctly declined to instruct the jury that, in order to convict, they were required to find that the defendant harbored a specific intent to confine Marcinowski by force and against his will. It was enough to establish that he had confined Marcinowski by force and against his will, and that the sequence of events had not been accidental.

3. *The view*. The judge permitted the jury to take a view of the bluff over the river at the Honey Pot. Allowing such a view is within the discretion of the trial judge. G. L. c. 234, § 35. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29 (1923). *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392 (1965). *Commonwealth* v. *Curry*, 368 Mass. 195, 198 (1975). *Commonwealth* v. *Perkins*, 6 Mass. App. Ct. 964 (1979). If, as the defendant suggested, there had been some physical changes at the scene — the evidence was conflicting on that score — between the time of the incident and the trial, those were differences for the defense to attempt to resolve in its favor before the jury. Even had there been changes, the judge could have decided that a view would have helped the jury understand the evidence. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 402 (1944).

4. *Motions for required finding of not guilty*. As to the counts for extortion and kidnapping, Saylor moved unsuccessfully for required findings of not guilty.

Extortion may take the form of a malicious threat to injure a person or his property with the intent to extort money. G. L. c. 265, § 25. *Commonwealth* v. *Miller*, 385 Mass. 521, 526 (1982). *Commonwealth* v. *Downey*, 12 Mass. App. Ct. 754, 756-757 (1981). There was evidence that Saylor had roughed up and terrorized Marcinowski, leaving it that he had not finished with him when he asked him how much money Mar-

cinowski had and helped himself to twenty dollars. That does not constitute all the evidence the jury might have considered but was sufficient to place the extortion charge before it.

Similarly, there was evidence that Saylor had moved into Marcinowski's car uninvited, shoved Marcinowski from the wheel by force, and through a show of his physical superiority had removed Marcinowski from Northampton to the Honey Pot, where he further confined Marcinowski against his will. That was sufficient to reach the jury on the kidnapping count.

5. *Extension.* The defendant claims to have been unfairly prejudiced by the denial of an enlargement of time to file a motion to suppress statements the defendant had made to a police investigator. Allowance or denial of a motion for enlargement is a matter within the discretion of the judge. Mass.R.Crim.P. 46(b), 378 Mass. 922 (1979). *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 338 (1983). There was no compelling reason offered for the extension and there was no abuse of discretion.

*Judgments affirmed.*