COMMONWEALTH *vs.* LEWIS S. LENT, JR.

No. 97-P-0742.

Berkshire. May 7, 1998. - May 10, 1999.

Present: WARNER, C.J., SMITH, & JACOBS, JJ.

*Robbery. Larceny. Kidnapping. Practice, Criminal,* Indictment. *Evidence,* Relevancy and materiality.

At the trial of an indictment for larceny from a person, the evidence was sufficient to warrant the defendant's conviction, where there was evidence that the defendant took the victim's property with the intent to deprive her of it permanently. [708]

At the trial of an indictment for kidnapping, the evidence was sufficient for the jury reasonably to infer that the defendant forcibly confined the victim against her will [709-710], and the indictment was not defective for the omission of a word where it clearly and unequivocally informed the defendant of the nature and elements of the crime with which he was charged [711].

At the trial of indictments, including an indictment for kidnapping, the judge properly allowed in evidence testimony about the defendant's "master plan" concerning young girls whom he intended to kidnap, where that evidence was relevant to the specific intent element of the crime charged. [711]

INDICTMENTS found and returned in the Superior Court Department, three on January 20, 1994, and one on December 7, 1994, respectively.

The cases were tried before *Daniel A. Ford,* J.

*Patricia A. O'Neill* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of four indictments charging kidnapping, armed robbery, assault with a dangerous weapon, and assault and battery. At his trial, the armed robbery indictment was submitted to the jury on only so much of the indictment as charged him with larceny from the person. The jury returned guilty verdicts on all of the indictments. On ap-

peal, the defendant raises several issues. He claims that the evidence with regard to the larceny from the person and the kidnapping indictments was insufficient to warrant the jury returning guilty verdicts on those indictments. The defendant also challenges the introduction of evidence disclosing his "master plan" concerning young girls whom he intended to kidnap. Finally, the defendant contends that the judge committed error in his instructions to the jury on the kidnapping indictment.

We recite the evidence in the light most favorable to the Commonwealth. On January 7, 1994, a twelve year old girl named Rose (a pseudonym) left her home shortly after 7:00 A.M. to walk to the Notre Dame Middle School in downtown Pittsfield, where she was in the seventh grade. She was carrying a backpack with the straps over her shoulders, and she was listening to a portable compact disc player with headphones (Discman) playing at full volume. Rose intended to walk down West Street to a railroad underpass, then to cross to the opposite side of the street near the Big Y supermarket. From there she would walk to North Street where the school was located.

While she was proceeding along West Street, Rose was approached from behind by a man whom she later identified as the defendant. He came to within an inch of her right side and walked at her pace. Rose noticed that the defendant was speaking to her, but she could not hear what he was saying because of the high volume of the music playing on her Discman. She then took off her headphones and heard the defendant say, "Do everything I say and everything will be okay." Rose also saw that the defendant was pointing a gun at her. He said, "Do you see the gun I have?" Rose saw it and became afraid; out of fear, she continued to walk along West Street with the defendant.

As they turned the corner onto North Street, the defendant switched positions from Rose's right side to her left, holding on to the sleeve of her jacket as he did so. As they continued along North Street, the defendant said, "Do you see that truck over there?" When Rose responded affirmatively, he told her to get into it. She began to struggle with the defendant, however, as he pulled her toward the truck.

Rose then pretended to have an asthma attack and asked the defendant if she could sit down to catch her breath. The defendant let go of her jacket and placed his hand on her backpack. Rose then slipped out of the straps of her backpack

and ran down North Street, leaving the defendant holding the backpack.

An eyewitness who was stopped at a traffic light on the corner of West and North Streets saw Rose struggle with the defendant and then flee. He also saw the defendant walk to a truck with something in his hand. The witness followed the truck for a short distance and then drove to a gas station to call the police. He gave a description of the truck and three numbers from the license plate.

Based on the descriptions given by Rose and the eyewitness, the police began to search for the truck in Pittsfield and the surrounding towns. It was located later that day parked in a driveway in Lanesborough. Several people, including the defendant, were in the house where the truck was parked. The defendant told the police that he had borrowed the truck the previous day from one of the occupants of the house and had returned it that morning. The defendant agreed to go to the Pittsfield police station to give a statement and to be photographed.

The defendant's photograph was later included in an array viewed by Rose and the eyewitness separately. They both identified the defendant as the person who had confronted Rose earlier that day. Rose also selected the defendant out of a lineup as the person who assaulted her. A loaded revolver, Rose's backpack, and other items were subsequently discovered in the defendant's van which was parked in the driveway where the pickup truck was found.

After his arrest, the defendant gave a series of statements denying involvement in the incident. However, he eventually signed a written statement in which he admitted that he tried to force Rose into the truck.

When asked why he wanted to kidnap Rose, the defendant told the police about his "master plan." According to the officers he spoke with, the defendant said that he looked for "vulnerable victims" whom he described as girls "who looked between the ages of twelve and seventeen" who were just beginning to develop and had long hair. In his bedroom he planned to build "shelf-like boxes . . . like bunk beds with a door he could close and secure . . . [where he could] keep [these girls] at all times so that he could take them out when he needed to use them for sex." The defendant stated that his master plan was not yet complete, "so to satisfy his sexual desires he would pick up girls for quickies."

After taking the defendant's statement, the police searched his home and found evidence of construction being done to his bedroom in conformity with the plan the defendant had described.

1. *Sufficiency of the evidence of larceny from the person.* The armed robbery indictment stated that the defendant "did rob and steal from the person of . . . [Rose] certain property, to wit: a [backpack] and [its] contents . . . ." At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on the armed robbery indictment. He claimed that the Commonwealth had not proved that he had the requisite intent to steal the backpack at the moment he took possession of it — larceny being an essential element of robbery.[1] The judge agreed that the evidence was insufficient and ruled that only the portion of the armed robbery indictment that charged larceny would be submitted to the jury. On appeal, the defendant argues that the larceny indictment should not have been submitted to the jury because there was insufficient evidence to show that he had the specific intent to permanently deprive Rose of her backpack at the precise moment he gained control of it.

"Larceny is the unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently." *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). The defendant has not cited any authority and we do not know of any which holds, in these circumstances, that the requisite intent must be present at the exact moment of the taking.

It is clear that after he obtained control of the backpack, the defendant placed it in his truck, drove to Lanesborough, and hid it in his van. "One who takes property without the authority of the owner and so uses or disposes of it as to show indifference whether the owner recovers possession may be found to intend to deprive the owner of it permanently." *Commonwealth* v. *Salerno*, 356 Mass. 642, 648 (1970). Therefore, it was for the jury to decide on the basis of the evidence whether the taking was larcenous. *Ibid.*

[1]The crime of armed robbery is described in G. L. c. 265, § 17, as appearing in St. 1952, c. 406, § 1, which states in relevant part: "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property . . . shall be punished . . . ."

2. *Sufficiency of the evidence of kidnapping.* The first clause of the kidnapping statute, G. L. c. 265, § 26, as amended by St. 1971, c. 900, makes it a crime to "forcibly or secretly confine[] or imprison[] another person within this commonwealth against his will." The third clause of that statute makes it a crime to "forcibly seize[] and confine[] or inveigle[] or kidnap[] another person, with intent either to cause him to be secretly confined or imprisoned in this commonwealth against his will . . . ."

The indictment in this matter, which was somewhat similar to the indictment in *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 220 & n.6 (1992), combined the entire first, and portions of the third, clause of G. L. c. 265, § 26,[2] and therefore, among other things, contained language which required the Commonwealth to prove that the defendant forcibly or secretly confined or imprisoned Rose.[3]

The defendant concedes that viewed in the light most favorable to the Commonwealth, there was adequate evidence of force to satisfy a reasonable juror of the presence of that element. He argues, however, that the evidence was insufficient to show that his actions in forcing Rose to accompany him at gunpoint resulted in her confinement or imprisonment. According to the defendant, that element requires that a victim either be taken to a place of confinement, or be kept against his or her will in a confined place. The defendant asserts that here, the evidence showed that he was thwarted in his attempt to force Rose into the truck and thus, at most, the evidence was adequate

---

[2]The indictment read in relevant part as follows:

"Lewis S. Lent, Jr. . . . . at Pittsfield . . . did, without lawful authority, forcibly or secretly confine or imprison . . . [Rose] within this Commonwealth against her will, with intent either to cause her to be secretly confined or imprisoned in this Commonwealth against her will or in any way held to service against her will. . . ."

The phrase "held to service against her will" first appeared in the kidnapping statute in 1836 (Rev. St. [1836], c. 125, § 20), and was connected to slavery. The phrase is considered to be surplusage. See *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 120 n.2 (1989).

[3]Because the Commonwealth chose to include portions of the third clause of the statute in the indictment, it was also required to prove a specific intent to cause Rose to be secretly confined or imprisoned against her will. See *Commonwealth* v. *Ware*, 375 Mass. 118, 120 (1978). If the Commonwealth had included only the first clause in the indictment, it would not have had to prove a specific intent. *Commonwealth* v. *Saylor*, *supra* at 121-122.

only to prove the crime of attempted kidnapping.[4]

Within the context of the crime of kidnapping, the concept of "confinement" has been broadly interpreted to mean any restraint of a person's movement. See *Commonwealth* v. *Titus*, 32 Mass. App. Ct. at 222 (the "[e]ssence [of kidnapping] is restraint, restraint of locomotion"). In *Commonwealth* v. *Vasquez*, 11 Mass. App. Ct. 261, 268 (1981), the defendant was charged with rape and kidnapping. The evidence showed that the young victim was approached by the defendant at a bus station and taken to a room in an abandoned building and raped. The defendant claimed that his motion for a required finding of not guilty on the kidnapping charge was erroneously denied, because the victim's confinement was merely incidental to the commission of the rape and therefore merged therein. The court held that "there was sufficient evidence concerning the defendant's confinement of the victim at the bus station and while on the way to the house some distance away to warrant the jury in finding that a kidnapping had occurred . . . ." *Ibid.* See *Commonwealth* v. *Rivera*, 397 Mass. 244, 245-247 (1986).

Here, the evidence produced by the Commonwealth indicated that Rose was shown a gun and, as a result, she was placed in fear. The defendant also pulled her by her jacket and constrained her by holding on to her backpack while they walked toward the truck. These facts demonstrated that her movements were restrained and provide sufficient evidence from which the jury could reasonably infer that the defendant forcibly confined Rose against her will. *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 122 (1989).[5]

---

[4]The defendant also argues that because the Commonwealth tried the matter on a theory that the defendant forcibly confined Rose as opposed to secretly confining her, it was necessary for the Commonwealth to show some form of involuntary asportation. According to the defendant, it is necessary to show asportation in order to distinguish the crime of kidnapping from other offenses which may involve some degree of confinement or restraint of movement. See Perkins & Boyce, Criminal Law 230-231 (3d ed. 1982).

Assuming without deciding that asportation is necessary where forced confinement is alleged, that element was not contested in this matter in view of the undisputed evidence that Rose was forced to walk at gunpoint to the truck. We add that if a kidnapping case is tried on the theory that the victim was secretly confined, evidence of asportation does not appear to be necessary. *Id.* at 231.

[5]The defendant argues that Rose's ability to walk under her own power and

The defendant also claims that because the indictment contained a portion of the third clause of the kidnapping statute, the omission of the word "seizes," which is in that clause, rendered the indictment defective.

General Laws c. 277, § 34, as appearing in St. 1979, c. 344, § 34, states in relevant part that "[a]n indictment shall not be dismissed or be considered defective . . . if it is sufficient to enable the defendant to understand the charge and to prepare his defense . . . ."

The indictment clearly and unequivocally informed the defendant of the nature and elements of the crime with which he was charged. There is nothing in this record that demonstrates that the defendant was prejudiced by the omission.

3. *Other issues.* Prior to trial, the defendant filed a motion in limine to exclude testimony of the defendant's "master plan." After a hearing, the judge in a thoughtful memorandum allowed the motion in part and denied it in part.

"Whether evidence is relevant in any particular instance and whether the evidence is so inflammatory in nature as to outweigh its probative value and thus preclude its admission are questions addressed to the sound discretion of the trial judge." *Commonwealth* v. *Booker,* 386 Mass. 466, 469 (1982). Here, the judge found that certain parts of the master plan were highly relevant in regard to the specific intent element of the crime charged. The judge also carefully limited the prejudicial factor by allowing the defendant's motion in part. On this record, the judge did not abuse his discretion.

The defendant also contends that the judge's instruction on the kidnapping indictment created a substantial risk of a miscarriage of justice. We have reviewed the judge's entire instructions and find no error.

*Judgments affirmed.*

---

her eventual escape indicated that she was in control of her movements and therefore was not confined. The argument ignores the fact, however, that the defendant restrained Rose's movements by pointing a gun at her and threatening to use it.