COMMONWEALTH *vs.* ROBERT BIBBY.

No. 99-P-704.

Bristol. February 5, 2001. - March 8, 2002.

Present: PERRETTA, SMITH, & LENK, JJ.

*Kidnapping. Practice, Criminal,* Instructions to jury. *Firearms.*

Evidence at the trial of an indictment charging the defendant with kidnapping, G. L. c. 265, § 26, was sufficient to sustain the Commonwealth's burden of proving that the defendant forcibly confined the victim against her will, and nothing in the case law or in the indictment itself required that the Commonwealth prove that the defendant had a specific intent to do so; consequently, there was no error in the judge's declining to instruct the . jury on the issue of specific intent. [160-162]

This court concluded that G. L. c. 140, § 121, which exempts, for purposes of that chapter only, any weapon manufactured in or before 1899 from the definition of "firearm," did not operate, at the trial of an indictment charging a defendant with the unlicensed possession of a firearm in violation of G. L. c. 269, § 10(*a*), to require that the Commonwealth prove that the weapon possessed by the defendant was manufactured after that date. [162-164]

INDICTMENTS found and returned in the Superior Court Department on February 12, 1997.

The cases were tried before *Nonnie S. Burnes,* J.

*Thomas J. McCarthy* for the defendant.

*James A. Janda,* Special Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from his convictions on indictments charging him with kidnapping, G. L. c. 265, § 26, and unlicensed possession of a firearm while not at home or work, G. L. c. 269, § 10(*a*), the defendant attacks the sufficiency of the evidence on the kidnapping charge and claims error in the judge's failure to instruct the jury on the issues of specific

intent and the statutory meaning of the word "firearm." We affirm the judgments.[1]

1. *The evidence.* There was evidence to show that the victim and the defendant had been dating, on and off, for about three years. On the evening of January 24, 1997, they were at a restaurant. According to the victim, she had not eaten and had consumed numerous alcoholic beverages. She felt "pretty close to drunk." After leaving the restaurant, she, the defendant, and his cousin drove aimlessly in her car. While driving, the defendant was firing a gun from the window. After dropping off the defendant's cousin, the defendant and the victim checked into a motel. The defendant had the keys to the victim's car.

Once inside their room, the victim became ill and went into the bathroom to vomit. Thereafter, she lay on the bed and told the defendant that she did not feel well and wished to go home. The defendant told her his friends were coming to the motel room and that they couldn't leave. When the defendant's friends arrived, they and the defendant began to drink. The victim again told the defendant that she was not well and wanted to leave. The defendant informed the victim that she could leave when he said so. As described by the victim, his tone of voice "wasn't very nice."

When the victim tried to leave, she discovered that the door was locked, and the defendant then put a chair in front of the door with the top of the chair under the doorknob. The victim returned to the bed and made a telephone call to a friend. She was able to say only a few words before the defendant unplugged the phone, demanded to know whom she had called, and knocked her backwards on the bed with a blow to her face. After striking the victim, the defendant stated, "It's all fun and games until someone gets knocked out." He put a gun to the right side of her head and told her that he would kill her if she called the police.

Notwithstanding the defendant's warning, the victim later in the evening plugged in the telephone and again called her friend.

---

[1]The defendant does not appeal from his conviction of assault with a dangerous weapon, G. L. c. 265, § 15B(*b*). The defendant's conviction on an indictment charging him with assault and battery, G. L. c. 265, § 13A, was placed on file.

She told the friend that she was frightened, that the defendant had hit her, that he had a gun, and that she wanted to go home. The victim assented to the friend's offer to call the police. At this point, the defendant ripped the telephone from the wall. Hearing that the police were on their way, the defendant's friends departed, and the defendant told the victim that if the police were about to arrive, they also should leave the room. Not wanting to leave with the defendant, the victim told him that the police were not coming. She remained in the room with the defendant and had intercourse with him.

About ten to fifteen minutes later, the police arrived. When the police knocked on the door, the defendant removed the chair from under the doorknob and opened the door. A male officer spoke with the defendant while a female officer spoke with the victim. Inside the room, the officers retrieved the defendant's jacket, in which they found a gun and ammunition.

2. *The kidnapping conviction.* Two claims which the defendant raises on appeal are based upon the premise that the Commonwealth was required to prove that the defendant had a specific intent to confine or imprison the victim forcibly or secretly. He argues that he was entitled to a required finding of not guilty and that the judge's jury instructions were erroneous. We take up first the scope of the indictment charging the defendant under G. L. c. 265, § 26. That statute sets out three relevant clauses, which read:

> "Whoever, without lawful authority, [1] forcibly or secretly confines or imprisons another person within this commonwealth against his will, or [2] forcibly carries or sends such person out of this commonwealth, or [3] forcibly seizes and confines or inveigles or kidnaps another person, with intent either to cause him to be secretly confined or imprisoned in this commonwealth against his will, or to cause him to be sent out of this commonwealth against his will or in any way held to service against his will, shall be punished . . . ."

In *Commonwealth* v. *Ware*, 375 Mass. 118, 119-120 (1975), the court stated that "[i]t may well be that the first clause of

§ 26 . . . states. a crime which does not require a specific criminal intent." In *Commonwealth* v. *Dean*, 21 Mass. App. Ct. 175, 181 n.8 (1985), we noted that *Ware* "suggested that clause [1] might be complete, with specific intent not required" and that the "same would apply to clause [2]." We thereafter expressly held that the first clause of § 26 "states a crime which may be proved by objective facts concerning the use of force and confinement and does not require proving a specific criminal intent." *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 121-122 (1989), citing both *Commonwealth* v. *Ware*, 375. Mass. at 120, and *Commonwealth* v. *Dean*, 21 Mass. App. Ct. at 181-182. See *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 709 (1999). These authorities unequivocally hold that the Commonwealth need not prove that a defendant had a specific intent to violate the first clause of G. L. c. 265, § 26.

Moreover, there is nothing in the indictment itself that required the Commonwealth to prove that the defendant had a specific intent to cause the victim to be secretly confined or imprisoned against her will. The indictment against the defendant charges:

> "[He] did, without lawful authority, forcibly seize and secretly confine and imprison [the victim] within this Commonwealth against her will *and* forcibly carry or send [the victim] out of this Commonwealth, *and/or* forcibly seize and confine or inveigle or kidnap [the victim], with intent either to cause her to be secretly confined or imprisoned in this Commonwealth against her will, or to cause her to be sent out of this Commonwealth, or be held to service against her will . . ."[2] (emphasis supplied).

Compare the indictments in *Commonwealth* v. *Ware*, 375 Mass.

---

[2]Although G. L. c. 265, § 26, is written in the disjunctive, the Commonwealth correctly framed the indictment using the conjunction "and," thereby charging that the defendant violated the statute in one, if not all, of the three manners therein proscribed. See *Commonwealth* v. *Murphy*, 415 Mass. 161, 164 (1993), and cases therein cited. Because the judge put the case to the jury on the sole basis of the first clause of § 26, as will be discussed *infra*, it is irrelevant to our conclusion that the indictment also recites the term "and/or." See *Commonwealth* v. *Murphy*, 415 Mass. at 165-166.

at 119; *Commonwealth* v. *Titus,* 32 Mass. App. Ct. 216, 220 n.6 (1992); *Commonwealth* v. *Lent,* 46 Mass. App. Ct. at 709 n.2.[3]

The Commonwealth presented sufficient evidence to sustain its burden of proof under the first clause of § 26. See *Commonwealth* v. *Robinson,* 48 Mass. App. Ct. 329, 334 (1999) ("essential element of kidnapping is not the level of violence but rather the defendant's forcible or secret confinement or imprisonment of the victim against his will"). As earlier noted, the victim testified that she wanted to leave the motel room and that she did not feel well. The defendant then informed the victim that she could leave when he said so, and he secured the door. He also disconnected the telephone and later ripped it from the wall, slapped the victim, put a gun to her head, and threatened to kill her. Photographs of the victim, taken by the police that morning, depicted the victim with a bruised face.

In charging the jury, the judge refused to deliver the defendant's requested instruction concerning specific intent and instructed counsel not to argue that point in their closing arguments. Thereafter, the judge put the case to the jury on instructions that were correct, in all respects, for their consideration of the defendant's guilt or lack thereof under the first clause of § 26.

3. *The firearm conviction.* General Laws c. 269, § 10(*a*),

---

[3]In *Commonwealth* v. *Ware,* 375 Mass. at 119, the indictment charged the defendant with an attempt, "without lawful authority, to forcibly seize, confine, and kidnap [the victim] *with intent* to cause her to be forcibly and secretly confined and imprisoned within the said Commonwealth against her will and to be held to service against her will" (emphasis supplied). Proof of a specific intent was required because the defendant was there charged with an attempt to kidnap and all attempts to commit a crime require proof of a specific intent. *Id.* at 120.

The indictment in *Commonwealth* v. *Titus,* 32 Mass. App. Ct. at 220 n.6, read that the defendant unlawfully "did forcibly confine or imprison [the victim], within this Commonwealth against her will, *with intent* either to cause her to be secretly confined or imprisoned in this Commonwealth against her will, or to cause her to be in any way held to service against her will" (emphasis supplied).

In *Commonwealth* v. *Lent,* 46 Mass. App. Ct. at 709 n.2, the indictment provided that the defendant "did, without lawful authority, forcibly or secretly confine or imprison . . . [the victim] within this Commonwealth against her will, *with intent* either to cause her to be secretly confined or imprisoned in this Commonwealth against her will or in any way held to service against her will" (emphasis supplied).

prohibits the unauthorized possession, or control in a vehicle, of a firearm while not at home or work. General Laws c. 140, § 121, defines the word "firearm" as a pistol, revolver, or other weapon capable of discharging a shot and having a barrel less that sixteen inches in length. See *Commonwealth* v. *Sampson,* 383 Mass. 750, 753 (1981); *Commonwealth* v. *Nieves,* 43 Mass. App. Ct. 1, 2 (1997). The Commonwealth presented testimony of a State police officer assigned to the firearms identification section that showed that the weapon in question was capable of discharging a bullet and had a barrel length of less than sixteen inches. During cross-examination, the witness acknowledged that he did not know whether the weapon in question was manufactured prior to 1899.

It is the defendant's argument that if the weapon in issue had been manufactured in or prior to 1899, it was not a "firearm" within the scope of G. L. c. 269, § 10(*a*). He claims that the judge was in error in refusing to allow him to make this argument to the jury and to instruct the jury accordingly. The defendant bases this argument on that part of G. L. c. 140, § 121, as in effect at all times here relevant, that provides that "any firearm, rifle or shotgun including any firearm, rifle or shotgun with matchlock, flintlock, percussion cap, or similar type of ignition system manufactured in or before eighteen hundred and ninety-eight" is, in effect, exempt from the definition of a firearm and therefore, he contends, outside the scope of G. L. c. 269, § 10(*a*). The argument is contrary to the legislative purpose of G. L. c. 269, § 10(*a*), and the clear and unambiguous language of G. L. c. 140, § 121.

In the first instance, § 10(*a*) "seeks to control the carrying of firearms so as to 'protect the public from the potential danger incident to . . . [their] unlawful possession.' " *Commonwealth* v. *Jackson,* 369 Mass. 904, 911 (1976), quoting from *Commonwealth* v. *Bartholomew,* 326 Mass. 218, 219 (1950). See *Commonwealth* v. *Seay,* 376 Mass. 735, 743 (1978). Secondly, the cited exemption provided for in G. L. c. 140, §. 121, expressly and unambiguously limits itself to G. L. c. 140,

§§ 122 to 129D, inclusive, and §§ 131, 131A, 131B and 131E.[4] This limitation is consistent with the purpose of G. L. c. 269, § 10(*a*). See *Commonwealth* v. *Jackson*, 369 Mass. at 911. See also Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 95-96 (1975).[5]

We see no error in the judge's rulings relating to the defendant's misplaced reliance upon G. L. c. 140, § 121.

*Judgments affirmed.*

---

[4]Although § 121 was amended by St. 1998, c. 180, § 8, and St. 1999, c. 1, § 1, the limitation remains. As amended, § 121 succinctly provides, as here pertinent: "The provisions of section 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to: (A) any firearm, rifle or shotgun manufactured in or prior to the year 1899 . . . ."

[5]In response to an inquiry from the Commissioner of Public Safety regarding the applicability of numerous firearm statutes to nonresidents coming into the Commonwealth with antique weapons for purposes of participating in various bicentennial celebrations, the Attorney General opined:

"[General Laws] c. 140, § 121 exempts certain weapons [hereinafter antique weapons] from regulation under G. L. c. 140, §§ 122-129D and §§ 131A, 131B, 131E, if they were manufactured before 1899 or are replicas of weapons manufactured prior to 1899 and if they meet the other specific requirements in section 121(A) or (B). The exemption allows antique firearms, rifles, or shotguns to be kept at home or in one's place of business without any special permit, license or card being required. However, this exemption for purposes of possession or ownership of a firearm, shotgun or rifle does not satisfy the provisions of G. L. c. 269, § 10(*a*), which regulates the *carrying* of firearms, shotguns, rifles and . . . antique weapons . . . . Thus, G. L. c. 140, § 121(A) or (B) does not exempt antique weapons from all gun control regulation." (Emphasis in original.)