## Commonwealth vs. Meraldo Rivera, Jr.

Suffolk. March 10, 2011. - July 12, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Attempt. Kidnapping. Evidence, Intent.*

A Boston Municipal Court judge erred in denying a criminal defendant's motion for a required finding of not guilty on a complaint charging the defendant with the attempted kidnapping of a child, in violation of G. L. c. 274, § 6, where there was insufficient evidence that the defendant intended forcibly or secretly to confine the victim. [141-144] Cordy, J., dissenting.

Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on December 29, 2008.

The case was tried before *James W. Coffey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alexandra H. Deal* for the defendant.

*Kris C. Foster*, Assistant District Attorney (*LaKeshia Parker*, Assistant District Attorney, with her) for the Commonwealth.

Ireland, C.J. In 2009, the defendant was tried before a jury on a complaint charging him with the attempted kidnapping of an eleven year old boy. G. L. c. 274, § 6. At the close of evidence, the defendant moved for a required finding of not guilty, which was denied. The defendant was found guilty, was sentenced to two years in a house of correction, with six months to serve followed by probation, and was required to register as a sex offender. He appealed, and we transferred the case to this court on our own motion. He argues that the trial judge erred in denying his motion for a required finding of not guilty because there was insufficient evidence to convict him, and that his statement to police was improperly admitted in evidence.[1] Because we

---

[1] The defendant also argues that the statute requiring him to register as a sex

conclude that there was insufficient evidence of his intent to kidnap the boy, we reverse the judgment and set aside the verdict. Judgment shall enter for the defendant.

*Facts.* We present the essential facts in the light most favorable to the Commonwealth.

On September 1, 2008, at approximately 1:30 P.M., the boy was walking along Dorchester Avenue in the Dorchester section of Boston, on his way to a pharmacy to pick up prescriptions for his mother. The boy testified that "a man," later identified as the defendant, "drove right next to [him]" and stopped his vehicle, a four-door sedan. The driver's window was open. Even though the boy could not recall the first thing the defendant said to him, he "stepped back" so that he was approximately three feet from the sedan, and "heard someone say, 'Get into the car.' "[2] The boy "said 'no' and then walked away." He went "straight to the pharmacy," which was fifty yards away. The entire exchange took approximately "[t]wo seconds," and the boy was not "face-to-face close" to the defendant. The defendant drove away. In response to the prosecutor's question whether the boy thought the defendant was following him, the boy stated, "Kind of, yeah."

On cross-examination, in response to the question whether the defendant followed him, the boy stated that he did not notice anything because he did not look at the vehicle after he said "no" and walked away. The boy testified that the defendant was driving back "toward the street" as he headed toward the pharmacy, and that the defendant did not pull his vehicle over a second time or speak to the boy again. The defendant never showed a weapon, got out of his vehicle, or threatened the boy.

A witness, who was in her vehicle parked across the street, saw the interaction between the boy and the defendant. She "believe[d] the car was there for a few minutes" after the interaction because she was able to note the registration plate number.

offender violates his substantive due process rights. Because of our conclusion, we need not address this issue.

[2]A detective, who had spoken to the boy and written a police report, testified on cross-examination that the boy told him that the defendant asked him where he was going and whether the boy "wanted a ride." The detective did not recall that the boy said that the defendant said, "Get into the car."

After the defendant drove away, the witness saw the boy again, approached him, and asked what had happened.[3] The boy then went home. The witness telephoned the police and gave them a description of the vehicle and its registration plate number.

The police found the defendant a short time later; he was arrested. A police officer testified that, while the defendant was in a holding cell, he read the defendant his Miranda warnings but did not have the defendant sign a waiver form. The officer testified that the defendant was a little "tipsy" but he was able to understand fully what the defendant said to him. The officer asked the defendant some questions. Relevant here is the defendant's response to the officer that he had wanted the boy to go home with him where he planned to "listen to music" with him.

The defendant did not call any witnesses and did not testify. His defense was presented through cross-examination and argument.

*Discussion.* In reviewing the denial of a required finding of not guilty, we review the evidence introduced up to the time the Commonwealth rested its case to determine whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for a reasonable jury to infer the existence of each essential element of the crime charged, beyond a reasonable doubt. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). No essential element of the crime may be left to a jury's conjecture, surmise, or guesswork. *Commonwealth* v. *Kelley*, 359 Mass. 77, 88 (1971).

We begin by addressing the defendant's contention that his statements to police that he wanted to take the boy home to listen to music with him were improperly admitted.[4] We need not address the issue because, as detailed below, even considering the defendant's statements, we conclude that there was insufficient evidence to support his conviction.

---

[3]There was conflicting testimony whether the witness talked to the boy while he was in the pharmacy or after he came out.

[4]The defendant did not move to suppress his statements or object to the officer's testimony concerning the defendant's implicit waiver of his Miranda rights. He did file several motions in limine, including a motion in limine for a "voir dire" as to his statements, which is noted on the docket as "filed."

The crime of attempted kidnapping requires, in relevant part, the intent to "forcibly or secretly" confine or imprison another person "against his will," G. L. c. 265, § 26, and an overt act toward the commission of the crime, G. L. c. 274, § 6. *Commonwealth* v. *Banfill*, 413 Mass. 1002, 1003 (1992). A child of "tender years" is not able to give consent to be taken from a parent's custody. *Commonwealth* v. *Colon*, 431 Mass. 188, 189-192 (2000) (defendant's taking willing twelve year old girl to out-of-State motel was against will of parents; girl's "consent" to kidnapping immaterial).

In the context of the kidnapping statute, the word "confine" has been interpreted to mean "any restraint of a person's movement." *Commonwealth* v. *Brown*, 66 Mass. App. Ct. 237, 241 (2006), quoting *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 710 (1999). The parties have not cited, and we have not found, any discussion in our case law concerning the meaning of the phrase "secretly confine." According to Professor LaFave, confinement is "secret" in nature "when it serves to isolate or insulate the victim from meaningful contact or communication with the public, that is, when the confinement is in a place or in a manner which makes it unlikely that members of the public will know or learn of the victim's unwilling confinement within a reasonable period of time." 3 W.R. LaFave, Substantive Criminal Law § 18.1(c), at 17 (2d ed. 2003). This court indorsed this definition, albeit implicitly, in *Commonwealth* v. *Perry*, 432 Mass. 214, 215 (2000), where the defendant was convicted of murder in the first degree and kidnapping. In that case, in addition to the use of force to confine the victim, the defendant prevented the victim from telephoning his mother and from meeting with visitors who came to the house where he was being held. *Id.* at 231. The court concluded that the evidence was sufficient to prove that the defendant confined the victim "by force and in secret." *Id.* See *Commonwealth* v. *Brown*, *supra* at 238-239 (although part of victim's confinement was forcible, defendant used ruse to get her to follow him to isolated place).

The defendant argues that the Commonwealth's evidence was insufficient to prove that he had the intent forcibly or secretly to confine the boy. We agree.

In *Commonwealth* v. *Banfill, supra* at 1003, this court reversed the defendant's conviction of attempted kidnapping on similar facts. There, the defendant, who was driving a truck, stopped three to five feet from the complainant, a thirteen year old girl, and asked directions to a certain street. *Id.* at 1002. Because the defendant "looked at [her] funny" and was asking his question "in a weird way," the girl lied, telling him that she was only visiting her grandmother and did not know where the street was. *Id.* Just as she was about to leave, he "told [her] to get in" his truck. *Id.* The girl ran away. *Id.* The entire interaction lasted approximately twenty-five seconds, and "the defendant did not 'make a move toward' her in any way, . . . open the truck door or display a weapon, and he did not 'try to grab out' at her." *Id.* at 1002-1003. The court held that the defendant's motion for a required finding of not guilty should have been allowed. *Id.* at 1003. Because the court found insufficient evidence of the defendant's intent to kidnap the child, the court did not reach the issue whether the defendant's statement to "get in" his truck constituted an overt act. *Id.*

The Commonwealth argues that the *Banfill* case is distinguishable because here there was sufficient evidence that the defendant intended to "secretly confine" the boy, where the defendant followed the boy after the boy refused to get into the vehicle and admitted that he wanted the boy to come home with him to listen to music. Concerning whether the defendant followed the boy, the Commonwealth asserts that there was sufficient evidence of the defendant's criminal intent because he "commanded" the boy to "get into the car," and because the boy testified that he "[k]ind of, yeah" *thought* that the defendant followed him. Assuming, without deciding, that following a child in these circumstances would be sufficient evidence of an intent forcibly or secretly to confine a child, the testimony that the defendant "[k]ind of, yeah" followed the boy is equivocal as to whether the defendant actually followed him after their interaction. Moreover, the boy testified on cross-examination that he did not "notice anything" about the defendant's vehicle because he did not look at it once he walked away. In addition, the eyewitness believed that the defendant's vehicle "was there for a few minutes" after the defendant's interaction with the boy. She did not testify that the defendant subsequently followed

the boy before he drove away; rather, she testified that he drove away while the boy was in the pharmacy. See *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979), quoting *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962) ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof").

We also are not persuaded that the defendant's statements that he "wanted to take [the boy] home" to "listen to music" are sufficient to support an inference of a specific intent to "isolate or insulate the [boy] from meaningful contact or communication with the public."[5] 3 W.R. LaFave, *supra.* As discussed, there is no evidence that the defendant did anything but drive away after the boy refused to get into the vehicle.[6] See *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998), quoting *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988) (evidence insufficient if it relies on conjecture and speculation).

*Conclusion.* For the reasons set forth above, we conclude that the judge erred in denying the defendant's motion for a required finding of not guilty.

> *Judgment reversed.*
>
> *Verdict set aside.*
>
> *Judgment for the defendant.*

---

[5]Although it is not dispositive, we note that police found the defendant sitting in his vehicle *outside* his home, listening to music. There is no evidence to support an inference that the defendant intended to prevent the boy from contact with the public if the two sat in his vehicle while listening to music. In addition, one of the police officers who went to talk to the defendant testified that the defendant's mother and "another gentleman" were at home at that time. There is no evidence to support an inference that the defendant believed that he would be alone in the home with the boy or that he could isolate him despite the presence of others. But see, e.g., *Commonwealth* v. *Perry*, 432 Mass. 214, 216-218 (2000) (victim forcibly and secretly confined even though family friend knew victim lived with defendant and was concerned about his well-being); *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 221 (1992) (kidnap victim confined in vehicle). See also 3 W.R. LaFave, Substantive Criminal Law § 18.1(c), at 17 (2d ed. 2003) (confinement usually in vehicle or residence; can occur even if third party is present).

[6]Because of our conclusion concerning the defendant's intent, we need not address whether the defendant's statement to "get into the car" constituted on overt act. See *Commonwealth* v. *Banfill*, 413 Mass. 1002, 1003 (1992).

CORDY, J. (dissenting). The defendant's conviction of attempted kidnapping must be affirmed if a reasonable jury could infer that he formed the intent to "without lawful authority, forcibly or secretly confine[] or imprison[] another person within this commonwealth against his will," G. L. c. 265, § 26; see *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 121-122 (1989), and, having failed in the perpetration, took an overt act toward the commission of that crime. G. L. c. 274, § 6. *Commonwealth* v. *Bell*, 455 Mass. 408, 412 (2009).

A rational fact finder could have determined that the defendant ordered an eleven year old boy, with whom he was not acquainted, to get into his car, with the admitted intention of taking the boy to the defendant's home. Because this is sufficient evidence to infer that the defendant took an overt act to "secretly confine" the boy,[1] I would not have reversed his conviction. See G. L. c. 265, § 26.

As a threshold matter, the defendant's order that the boy "get into the car" is plainly an overt act toward the commission of the crime of kidnapping. On the question of secret confinement, I agree with the court, *ante* at 142, that the statutory term "confinement" "has been broadly interpreted to mean any restraint of a person's movement." *Commonwealth* v. *Brown*, 66 Mass. App. Ct. 237, 241 (2006), quoting *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 710 (1999). An adult's asportation of a child, inside a moving car, plainly would have been a "restraint" of the child's "movement." *Id.* The issue becomes whether the attempted act of the defendant bore sufficient indicia of secrecy.[2]

The court states, *ante* at 142, that in *Commonwealth* v. *Perry*, 432 Mass. 214, 215 (2000), we implicitly indorsed Professor LaFave's definition of the phrase "secretly confine[]" as confinement "in a place or in a manner which makes it unlikely that members of the public will know or learn of the victim's

---

[1]The court is correct to point out, *ante* at 142, that the eleven year old boy is a child of "tender years" and is per se held "against his will" if he is held without the consent of his parents or legal guardian. *Commonwealth* v. *Colon*, 431 Mass. 188, 191 (2000). See *Commonwealth* v. *Nickerson*, 5 Allen 518, 526 (1863); *Commonwealth* v. *Moyles*, 45 Mass. App. Ct. 350, 354 (1998).

[2]The Commonwealth did not argue that the defendant's command, "Get into the car," was sufficient to show an intent forcibly to confine the boy. See G. L. c. 265, § 26.

unwilling confinement within a reasonable period of time."
3 W.R. LaFave, Substantive Criminal Law § 18.1(c), at 17 (2d
ed. 2003). However, the court's opinion in *Commonwealth* v.
*Perry, supra,* does not cite to Professor LaFave's treatise. Nor
does it discuss, as a factor bearing on the culpability of a defend-
ant, the likelihood that "members of the public will know or
learn" of the confinement. In the *Perry* case, there was evidence
that the victim was often bound, gagged, and physically abused
over a period of months in the defendant's mother's home,
ultimately leading to the victim's death. The court concluded
that the evidence against the defendant on the charge of kidnap-
ping (either by forcible or secret confinement) was sufficient on
theories of both joint and individual liability where the defend-
ant knew the victim was bound and gagged, participated in
some of the acts of abuse, and would stand blocking the entry
to the stairs leading to the room where the victim was held
when certain visitors came to the house. *Id.* at 231. I do not
read that case, or any other case we have decided, to support
the proposition that we have adopted Professor LaFave's precise
definition of secret confinement.

It seems to me that the evidence here was sufficient for a
rational juror to conclude that the defendant attempted secretly
to confine the boy. The defendant, without ascribing legal
significance to the word, attempted what in everyday usage
would be called an "abduction" of the boy. That is, by his own
admission, the defendant intended first to confine the boy inside
his car and then in a private home without legal authority. If
successful, the defendant would have accomplished this without
the knowledge of the boy's parents or legal guardians and, had
a vigilant witness not recorded the defendant's registration plate
number, without leaving any independent information that
authorities could use to ascertain the missing boy's whereabouts.
This is sufficiently "secret" as the term must be understood by
its ordinary usage. See *Boston Police Patrolmen's Ass'n* v.
*Boston,* 435 Mass. 718, 720 (2002), quoting *Champagne* v.
*Champagne,* 429 Mass. 324, 326 (1999) (general and familiar
rule is that statute must be interpreted "according to the intent
of the Legislature ascertained from all its words construed by
the ordinary and approved usage of the language").

Even still, under Professor LaFave's definition, a rational jury could conclude that the defendant intended to confine the boy in a manner rendering it "unlikely that members of the public [would] know or learn of the victim's unwilling confinement within a reasonable period of time." 3 W.R. LaFave, *supra.* The evidence was sufficient to establish that the defendant planned to take the boy inside a car, drive him to an unknown residence, and, at the very least, hold him for an indefinite amount of time, all without informing anyone who could assiduously assure that the boy was safe. This would afford an ample and "reasonable period of time" for the boy's parents to become struck with panic or, worse yet, for the boy to be harmed, before any appropriate members of the public could meaningfully learn of the confinement in time to come to his aid.

The court states that the police found the defendant outside his home listening to music, and that the defendant's mother was inside the home, as support for its conclusion that the evidence was insufficient to support an inference that the defendant intended to "isolate or insulate the [boy] from meaningful contact or communication with the public." *Ante* at 144 & n.5, quoting 3 W.R. LaFave, *supra.* This view of sufficiency could be read to suggest that a putative kidnapper who confines a child against his will, inside a car or private home, might escape liability if the car is not completely removed from public view or if there is another person in close enough proximity that the child could theoretically communicate his or her discontent with the confinement. Such a reading would be contrary to our law. *Commonwealth* v. *Perry, supra* at 216-218 (victim forcibly and secretly confined even though family acquaintance and others were aware that he was staying at defendant's home and being systematically abused there).

In this case, when ordered into the car, the boy had the presence of mind to continue on to the pharmacy to pick up his mother's prescriptions. Had he not been so alert, and had he entered the confines of the defendant's car, I fail to see how this would not be a clear-cut case of kidnapping. In falling short, it constituted an attempted kidnapping. Therefore, I respectfully dissent.