Commonwealth *vs.* Strickler M. Brown.

No. 05-P-935.

Worcester. March 3, 2006. - May 4, 2006.

Present: Greenberg, Duffly, & Katzmann, JJ.

*Rape. Kidnapping. Practice, Criminal,* Required finding.

At the trial of indictments charging the defendant with aggravated rape and kidnapping, as well as four counts of rape and two counts of assault, the jury properly could have credited all of the Commonwealth's evidence in support of a finding of guilt on the aggravated rape indictment, with kidnapping as the aggravating circumstance, even though the jury failed to convict the defendant on the other counts. [240-241]

A Superior Court judge properly denied a criminal defendant's motion for a required finding of not guilty on an indictment charging aggravated rape with kidnapping as the aggravating circumstance, where the Commonwealth's evidence of confinement was sufficient to support the kidnapping component of the aggravated rape charge, given evidence of confinement beyond that used to facilitate the sexual assaults on the victim, including actions after the rape itself but during the same criminal episode. [241-244]

Indictment found and returned in the Superior Court Department on August 14, 2002.

The case was tried before *C. Brian McDonald,* J.

*Thomas C. Foley* for the defendant.

*Michelle R. King,* Assistant District Attorney, for the Commonwealth.

Duffly, J. A Superior Court jury found the defendant guilty of aggravated rape (with kidnapping as the aggravating circumstance), in violation of G. L. c. 265, § 22(*a*); and of kidnapping, in violation of G. L. c. 265, § 26. The jury returned verdicts of not guilty on six other indictments.[1] The trial judge

---

[1] The defendant was found not guilty of four counts of rape, G. L. c. 265, § 22(*b*); one count of assault and battery with a dangerous weapon (a stick),

directed a verdict in favor of the defendant on the kidnapping conviction.[2] On appeal, the defendant claims the evidence was insufficient to support his conviction of aggravated rape, and that it was error to deny his motion for a required finding of not guilty. We affirm the judgment.

On the evidence at trial, viewed favorably to the Commonwealth, the jury could have found the following facts. It was shortly before midnight on May 29, 2002, when the eighteen year old victim left her boyfriend's house in Fitchburg, and headed for home on foot. She first walked to a convenience store to buy a pack of cigarettes, and while there stopped to talk to some people she knew who were outside. The defendant came by on a bicycle and joined in the conversation. At forty-one, he was quite a bit older than the victim, but it turned out that he and the victim knew some of the same people and the two spent some time talking about their mutual friends.

As he was leaving, the defendant asked if anyone wanted to accompany him to Main Street, where he was going to drop off the bicycle. Only the victim said she would join him. They set off down Main Street, but the defendant then said the bicycle had to be returned to a location on Water Street, which was across the railroad tracks; he suggested a short cut across the train tracks to avoid traveling further down the road to a bridge. When it started to rain lightly, the victim agreed to the defendant's suggestion that they wait under a bridge until it stopped raining. While under the bridge, the defendant started "hitting on" the victim, saying he thought she was pretty and complimenting her on her eyes. The defendant suddenly grabbed her shoulders and pulled her to the ground, and said he "could have [his] way with [her] right now and nobody could stop him." When the victim began to cry, the defendant yelled at her to stop, but after a minute he let her up and said he'd been kid-

G. L. c. 265, § 15A(*b*)(1); and one count of assault with a dangerous weapon (a rock), G. L. c. 265, § 15(*b*).

[2]The judge ruled that "[u]nder rule 29A the evidence is insufficient as a matter of law to sustain a separate conviction of kidnap[p]ing where kidnap[p]ing was found by the jury to have been an aggravating circumstance of the rape, and I'm going to direct that a verdict of not guilty enter on count six of the indictment." The Commonwealth does not challenge the dismissal.

ding, that he just wanted to teach her a lesson not to walk with strangers. The victim felt scared and was unable to stop crying.

A few moments had passed before the defendant's mood changed again, and he once again threw her to the ground. The victim asked the defendant to stop and said he was scaring her. He told her to shut up, but she still could not stop crying. The defendant again told her he could have his way with her and nobody would ever know. He said, "[Y]our boyfriend can't save you now," and tried to kiss her and didn't stop when she asked him to, saying "[Y]ou know you want it, . . . you know you're a slut." In a further effort to end the assault, the victim said she had HIV (though she did not), but the defendant said he didn't believe her. She then tried to gain his sympathy by saying (falsely) that she had a two year old daughter. This ploy was equally unsuccessful, and the defendant persisted in his efforts to take the victim's clothing off, until he eventually was able to pull down her pants. He then committed various sexual acts on the victim, including digital penetration, and oral and vaginal sex, as she continued to cry. During these acts the defendant told her to "shut up and take it like a woman . . . I know you like it, . . . it feels good." When he had ejaculated, he got up and told the victim to get dressed.

The defendant then looked around for a sharp stick and used it to poke the victim; he poked her five to seven times in the upper chest and lower neck, leaving a number of marks on her body. He told her he would kill her if she told anyone what he'd just done. When the victim said she wouldn't tell, the defendant's mood changed again, and he expressed remorse and started to cry. He said he was sorry, that he couldn't believe what he'd just done. To placate him, the victim said she forgave him; she said she wanted to leave, but the defendant told her she could not, that she was "in shock" and could not be seen walking around like that because people would notice. Now reverting to an angry tone of voice, the defendant said, "[W]ell, since you forgive me, a second time [won't] matter." He overcame the victim's resistance and again took her clothes off; she asked him to stop, but he bent her over and vaginally raped her. The defendant kept a rock nearby as he performed sexual acts on the victim.

After he had ejaculated, the defendant instructed the victim to clean herself up with the T-shirt that she had been wearing. The victim complied with this demand, and then said again that she wanted to leave. The defendant stated that he was going to walk with her "to make sure that [she] didn't tell anybody." As the two began walking together, the defendant became "mean again" and demanded that the victim follow him up a hill, that he had changed his mind and did not want the victim to return to Main Street. At this point, some people approached and the victim saw that it was the group that she and the defendant had been talking to earlier in the evening. Sensing that this was her "way out," she went over to the group with the defendant following close behind. As the defendant began to converse with the people in the group, the victim tried to drift away, heading toward the convenience store. When the defendant noticed the victim leaving, he caught up with her. She said she had to get milk for her two year old daughter, and he said she was "lucky that [her] friends showed up and not to tell the police; just to go into [the convenience store] and act·normal." The victim then went into the store, while the defendant rode off on his bicycle. She left the store after he had gone. A police cruiser drove by as she walked down the street. When the officers stopped and asked the victim if she needed help, she told them she had been raped.

*Discussion.* We address with dispatch the defendant's first argument, that the jury's failure to convict on four of the rape counts and on the two indictments alleging assault, and assault and battery by means of a dangerous weapon, requires us to conclude that the jury did not believe the victim's story up to the point at which the defendant told the victim that she could not leave because she was in shock.

Even assuming, arguendo, that there were inconsistencies in the jury's verdict, it is settled law that "[w]here . . . there are multiple counts, factual inconsistencies in verdicts rendered on those multiple counts do not afford a ground for setting aside a conviction as long as the evidence is sufficient to support a conviction on the count on which the guilty verdict was reached." *Commonwealth* v. *Pease*, 49 Mass. App. Ct. 539, 542 (2000). See *Commonwealth* v. *Harrison*, 25 Mass. App. Ct. 267,

270 (1988), and cases cited therein. "[This] rule recognizes the power, possibly salutary, of juries to compromise and to act out of leniency." *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 33 (1984). See *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969) ("that the same evidence was offered in support of each indictment would not permit an acquittal on one to be pleaded as [']res judicata['] of the other"). The jury properly could have credited all of the Commonwealth's evidence in support of a finding of guilt on the aggravated rape indictment, with kidnapping as the aggravating circumstance.

We also reject the defendant's claim that the Commonwealth's evidence of confinement was insufficient to support the kidnapping component of the aggravated rape charge, and that any confinement of the victim was incidental to commission of the rape and was merged therein. "A person is guilty of kidnapping if he or she 'without lawful authority, forcibly or secretly confines or imprisons another person within this commonwealth.' G. L. c. 265, § 26." *Commonwealth* v. *Perry*, 432 Mass. 214, 231 (2000). "Within the context of the crime of kidnapping, the concept of 'confinement' has been broadly interpreted to mean any restraint of a person's movement." *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 710 (1999). Where "confinement or asportation [is] used as a means to facilitate the commission of [a rape]," it constitutes the separate crime of kidnapping and it will not be merged into the substantive crime of rape. *Commonwealth* v. *Rivera*, 397 Mass. 244, 254 (1986).

The facts of this case are distinct from those of *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720, 722 (1991), overruled on other grounds by *Commonwealth* v. *McCourt*, 438 Mass. 486, 496 n.12 (2003), on which the defendant principally relies. In *Kickery*, the victim went willingly with the defendant and her boyfriend to an area near some woods. She went deeper into the woods with her boyfriend, with whom she then had consensual sex. The boyfriend then left her there and returned with the defendant. The two men then ripped off her clothes and raped her. We held in that case "that the victim willingly accompanied the defendant and [her boyfriend] to where the rape eventually occurred; nonconsensual 'confinement or aspor-

tation [was not] used as a means to facilitate the commission of [the rape].' " *Commonwealth* v. *Kickery, supra* at 723, quoting from *Commonwealth* v. *Rivera,* 397 Mass. 244, 254 (1986). Further, any confinement of the victim during the rape itself did not exceed the constraint which was incident to the rape. *Ibid.*

Here, however, there was evidence of confinement beyond that used to facilitate the sexual assaults on the victim. Before throwing her to the ground and forcefully removing her clothing the second time, the defendant constrained the victim's movements by poking the victim with a sharp stick about the neck and chest, and threatening to kill her if she told anyone what he had done; he told her she could not leave, and she remained because he had scared her and she was too frightened to attempt to leave. See *Commonwealth* v. *Sumner,* 18 Mass. App. Ct. 349, 352 (1984) (confinement not merged within rape where "the jury reasonably could have found . . . that, in duration, planning, and, execution," defendant's actions of locking the victim in his apartment after she willingly entered coupled with his statements and the battery of the victim just prior to the rape "exceeded restraint which was merely incidental" to the rape's commission).

In any event, the defendant focuses too narrowly on events that occurred prior to the last sexual assault on the victim. Evidence that the defendant had placed restraints on the victim's movements immediately following the rape may also support a conviction of kidnapping as an aggravating circumstance to the rape. The Supreme Judicial Court, in *Commonwealth* v. *McCourt, supra* at 496 n.12, overruled the holding in *Commonwealth* v. *Kickery,* that the aggravating factors that transform rape into aggravated rape (there, a brutal physical assault) must have facilitated the rape, and that a physical assault occurring after the rape therefore could not have been an aggravating factor. In rejecting this view of G. L. c. 265, § 22,[3] the Supreme Judicial Court said of this statute:

---

[3]In pertinent part, G. L. c. 265, § 22 (*a*), as appearing in St. 1980, c. 459, § 6, reads:

> "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if

"[O]n its face, [it] does not require that the aggravating factor or factors be used to facilitate the unlawful sexual intercourse. When a rape victim sustains serious bodily injury, the pertinent statutory language requires only that the intercourse have been 'committed with' the acts that resulted in the victim's injuries.

"While the language 'committed with,' of course, implies some logical nexus between time and place, the words do not specifically require that the physical force precede the rape or that the injuries be inflicted to overcome a victim's will to resist. If this were true, a person who savagely beat his victim following a sexual attack, as here, would be punished less severely than one who inflicted the beating before penetration, even though both rape victims sustained identical injuries."

*Id.* at 492-493.

By the same token, the offense of aggravated rape also may encompass a confinement of the victim that takes place after the rape itself, but during the same criminal episode. "The Legislature's clear purpose in creating the offense of aggravated rape was to protect victims of violent sex offenders, by punishing more severely perpetrators . . . who commit other felonies against the victim in addition to the rape. The critical point is not whether the aggravating acts served to compel a victim's submission, but whether the rape victim . . . was subjected to other felonious conduct, during the same criminal episode." (Footnote omitted.) *Id.* at 495.[4]

Here, the jury reasonably could have found that the defendant, during the same episode as the rape but following the last act of vaginal penetration, restrained the victim's movements by refus-

---

either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, . . . or is committed during the commission or attempted commission of an offense defined in section . . . twenty-six [kidnapping] of this chapter, . . . shall be punished by imprisonment in the state prison for life or for any term of years."

[4]The trial court judge, well aware of *Commonwealth* v. *McCourt*, instructed accordingly.

ing to let the already battered, frightened, and compliant victim leave alone, by walking next to her as they both left "to make sure that [she] didn't tell anybody," and by directing her movements and repeatedly threatening her along the way. Cf. *Commonwealth* v. *Sumner*, 18 Mass. App. Ct. at 352-353; *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 219-221 (1992) (defendant stepfather kidnapped victim he had sexually abused when he threatened her before instructing her to get into his car and she complied out of fear; he threatened to kill her during the drive, and she fled from him when they stopped at a gas station). *Commonwealth* v. *Lent*, 46 Mass. App. Ct. at 710 (defendant restrained victim's movement, thus committing a kidnapping, by threatening victim with a weapon and briefly pulling victim by her backpack before she was able to wiggle loose and run away).

*Conclusion.* The denial of the defendant's motion for a required finding of not guilty is affirmed.

*Judgment affirmed.*