NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-967                                         Appeals Court

COMMONWEALTH vs. RICHARD L. GILBERT.

No. 17-P-967.

Worcester.      May 10, 2018. - October 3, 2018.

Present: Trainor, Ditkoff, & Wendlandt, JJ.

Rape. Kidnapping. Assault with Intent to Rape. Indecent
    Assault and Battery. Administering Drug with Intent of
    Facilitating Unlawful Sexual Intercourse. Assault and
    Battery by Means of a Dangerous Weapon. Burglary.
    Practice, Criminal, Plea, Postconviction relief, Sentence,
    Duplicative convictions, Assistance of counsel.

Indictments found and returned in the Superior Court
Department on September 13, 2002.

A motion to withdraw pleas of guilty and for resentencing,
filed on December 13, 2016, was heard by J. Gavin Reardon, Jr.,
J.

Edward C. Gauthier, IV, for the defendant.
Donna-Marie Haran, Assistant District Attorney, for the
Commonwealth.

DITKOFF, J. Based on a long and brutal series of rapes and

assaults on a single victim, the defendant, Richard L. Gilbert,

pleaded guilty to multiple crimes, including eleven indictments

for aggravated rape, in a plea without an agreement regarding disposition. Concluding that multiple counts of aggravated rape may be premised on a single aggravating factor, we reject the defendant's claim that three of his aggravated rape convictions and eight of his convictions of lesser offenses must be vacated. Further finding no ineffectiveness in plea counsel's lengthy sentencing argument or his advice to the defendant, we affirm the Superior Court order on the defendant's motion for postconviction relief.

1. Background. At approximately 9 P.M. on June 26, 2002, the victim, a thirty-eight year old woman, arrived home alone to the apartment in Worcester that she shared with her two school-aged children. She encountered the defendant outside her apartment and exchanged cursory greetings with him before turning to her apartment. As she unlocked the door, the defendant pushed the victim inside and grabbed her face to cover her mouth as she screamed. He threw her face first onto the floor and told her to unbutton and unzip the shorts she was wearing, then pulled them down with her underpants. He repeatedly threatened her "to just do what he said," and not to scream. He said he "would hurt her," but that it "would be over in a minute."

The defendant tried to enter the victim's vagina and rectum but was unable to do so. He then performed oral sex on her and

digitally penetrated her vagina and rectum. The victim begged the defendant to let her go, falsely telling him her children would be home at any moment. The defendant did not stop; instead, he lifted her off the floor, told her they were leaving the apartment, took her keys, and carried her across the hallway to a second apartment, where the defendant's parents lived. The door was locked, and he was unable to enter despite kicking and banging on the door. He told her, "We're going back to your place," and said, "If you make any noise, I'll snap your neck."

The defendant reentered her apartment with the victim and made her get on the floor. He grabbed some clothing and used it to gag and bind the victim with her hands behind her back, then took the victim out a back door to another hallway. They entered his parents' apartment through an unlocked back door. Once inside, he took the victim to a room with a mattress on the floor and told her to lie down. The defendant rubbed lotion and cream all over her body, then alternated between penetrating the victim vaginally and performing oral sex on her. He also forced her to perform oral sex on him. The defendant then turned the victim on her stomach, gagged her mouth, and hog-tied her hands and feet together. He carried her to a different bed in another room, then went inside a bathroom and returned with a hypodermic needle. Showing it to the victim, he said, "This is what drugs do to you. I'm a product of my environment. . . . It's almost

over."  The defendant took the hog-tied victim into the bathroom and put her on her hands and knees, then penetrated her anally until she screamed in pain.  He stopped, then penetrated her vaginally and forced her to perform oral sex on him.

The defendant prepared the needle for the victim, giving her an option:  injection into her arm or into her neck.  The victim begged the defendant not to inject her at all; nevertheless, he injected the needle into her buttocks and told her it was liquid valium.  He shaved her pubic area and lathered her body with cream before vaginally raping her again and forcing her to masturbate herself.  The defendant prepared another needle and injected the victim a second time into her foot.  He put the victim on all fours and penetrated her from behind, then orally, ejaculating into her mouth.  He made the victim wash her mouth out, telling her she was rinsing away evidence.

As the defendant prepared a third needle, the victim said she "didn't feel right"; she was shaking, her mouth was dry, and she was experiencing heart palpitations.  He replied, "[T]hat's what was supposed to happen," and injected her a third time, telling the victim "this was dinner and dancing."  He also said to "never forgive him and what he did was a horrible thing," and that he had "added time because he had kidnapped her from her apartment."  Then he vaginally raped her again.

At this point the defendant untied the victim, letting her put on a pair of his jeans while he made a telephone call. On the telephone, the defendant said he had blacked out and awakened with someone he had taken against her will, but that it was too late to turn back now. He made the victim say hello to whomever he was talking to before hanging up. After the call, the defendant ordered her to undress again and made her perform oral sex on him. He also penetrated her from behind and vaginally while on her back.

The defendant told her to get dressed, tied her hands and feet, gagged her mouth with a sock, and hog-tied the victim again with her hands behind her back. The defendant said he "would give her [ten] minutes," then telephoned for a taxicab for himself. After he left, the victim was able to untie herself and unlock the door, leaving the apartment in terror and running out into the street and to a Dunkin' Donuts where she begged for help. It had been approximately two and one-half hours since the ordeal began.

Worcester police and an ambulance responded, and the victim gave police a detailed description of her assailant. At the hospital, a rape kit produced seminal fluid from vaginal, rectal, and oral swabs taken from the victim. Her blood tested positive for cocaine metabolites, and a physical examination showed bruises on the victim's wrists, ankles, arms, posterior,

and back.  Among other evidence, investigators recovered fingerprints matching the victim's at the defendant's parents' apartment and corroborated other details from the victim's account.  The next day she identified the defendant as the perpetrator from a ten-person photographic array.

The defendant was arrested on June 28, 2002.  A Worcester County grand jury returned indictments on September 13, 2002, charging him with one count of aggravated kidnapping, G. L. c. 265, § 26; eleven counts of aggravated rape, G. L. c. 265, § 22 (a); one count of indecent assault and battery, G. L. c. 265, § 13H; one count of assault with the intent to rape, G. L. c. 265, § 24; three counts of drugging a person for the purpose of sexual intercourse, G. L. c. 272, § 3; six counts of assault and battery by means of a dangerous weapon (three with the needle and three with the gag), G. L. c. 265, § 15A (b); one count of assault and battery, G. L. c. 265, § 13A; one count of burglary, G. L. c. 266, § 14; and one count of threatening to commit a crime, G. L. c. 275, § 2.

At a plea hearing on March 10, 2003, the defendant admitted to the facts above, and pleaded guilty to all charges after a thorough colloquy.  The judge (plea judge) heard recommendations from the Commonwealth and defense counsel, and heard from the defendant himself, before sentencing the defendant to various concurrent sentences, with lead sentences of thirty-five to

sixty years for the aggravated rapes.[1]  Following other
postconviction proceedings, the defendant filed a motion to
withdraw his guilty pleas and for resentencing on December 13,
2016.  A Superior Court judge (motion judge) denied the motion
on May 25, 2017, and this appeal followed.

2.  Standard of review.  "A motion to withdraw a guilty
plea is treated as a motion for a new trial under
Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001)."
Commonwealth v. Ubeira-Gonzalez, 87 Mass. App. Ct. 37, 39
(2015), quoting Commonwealth v. Furr, 454 Mass. 101, 106 (2009).
We accept the facts found by the motion judge if supported by
the evidence and review a decision on such a motion "to
determine whether the judge abused [his] discretion or committed
a significant error of law."  Commonwealth v. Resende, 475 Mass.
1, 12 (2016).  "A judge has discretion to allow a defendant's
motion to withdraw his guilty pleas 'at any time if it appears
that justice may not have been done,'" Commonwealth v. Roberts,
472 Mass. 355, 360 (2015), quoting rule 30 (b), including if the
plea was not voluntary or intelligent.  See Ubeira-Gonzalez,
supra at 41.  The defendant bears the burden of proof on a

---

[1] The sentences included community parole supervision for
life, pursuant to G. L. c. 265, § 45.  That portion of the
sentences was vacated after the Supreme Judicial Court struck
down community parole supervision for life as set forth in § 45
as an unconstitutional violation of the separation of powers
doctrine.  See Commonwealth v. Cole, 468 Mass. 294, 295, 308-309
(2014).

motion to withdraw a guilty plea and must "prove facts that are 'neither agreed upon nor apparent on the face of the record.'" Id., quoting Commonwealth v. Comita, 441 Mass. 86, 93 (2004).

3. Aggravated rape and separate convictions. The defendant argues that his convictions of aggravated kidnapping, burglary, and six counts of assault and battery by means of a dangerous weapon are duplicative as predicate offenses for eight of the aggravated rape convictions. He further argues that the remaining three aggravated rape convictions must be reduced to rape convictions for want of additional predicate offenses. These arguments depend on the propositions that each aggravated rape must have a separate predicate offense and that the only available predicate offenses are those that were charged. We disagree with both of those propositions.

A conviction of aggravated rape under G. L. c. 265, § 22 (a), requires that the rape be aggravated by serious bodily injury, or being committed by a joint enterprise, or being "committed during the commission or attempted commission" of a specified aggravating offense.[2] Here, the Commonwealth does not

_____

[2] In relevant part, G. L. c. 265, § 22 (a), provides:

"Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse [1] results in or is committed with acts resulting in

argue that there was a joint enterprise or serious bodily injury within the meaning of the statute, so each aggravated rape must be supported by the commission of an aggravating offense. Considering "the entire sequence of events," Commonwealth v. Thomas, 89 Mass. App. Ct. 422, 429 (2016), the key inquiry is "whether the aggravating acts" and the intercourse occurred during "one continuous course of criminal conduct directed at the victim."  Id., quoting Commonwealth v. McCourt, 438 Mass. 486, 496 (2003).  "Sexual intercourse is defined as penetration of the victim," Commonwealth v. Enimpah, 81 Mass. App. Ct. 657, 659 (2012), quoting Commonwealth v. Lopez, 433 Mass. 722, 726 (2001), and separate acts of penetration during the same criminal episode may be charged as separate rapes.  See Commonwealth v. Vega, 36 Mass. App. Ct. 635, 636-637, 640 (1994) (defendant convicted of three counts of rape based on two incidents of vaginal penetration and one incident of anal penetration).

General Laws c. 265, § 22 (a), is intended "to protect victims of violent sex offenders, by punishing more severely perpetrators . . . who commit other felonies against the victim

---

serious bodily injury, or [2] is committed by a joint
enterprise, or [3] is committed during the commission or
attempted commission of an offense defined in [G. L.
c. 265, §§ 15A, 15B, 17, 19, or 26], [G. L. c. 266, §§ 14,
15, 16, 17, or 18,] or [G. L. c. 269, § 10,] shall be
punished . . . ."

in addition to the rape." McCourt, 438 Mass. at 495.  The
Legislature chose the flexible term "committed during" in
describing the relationship between the rape and the predicate
offense.  See id. at 493 (terms "committed with" and "committed
during" in § 22 [a] evinced legislative "intent to avoid a
limiting temporal distinction" between rape and aggravating
factors).  Thus, "[t]he critical point is . . . whether the rape
victim . . . was subjected to other felonious conduct . . .
during the same criminal episode," Commonwealth v. Brown, 66
Mass. App. Ct. 237, 243 (2006), quoting McCourt, supra at 495,
and not whether each act of rape corresponds to a discrete
aggravating offense.[3]

For example, on the defendant's view, a person who raped a
single victim ten separate times during a single act of
kidnapping could be charged with only one count of aggravated
rape.  Not only would it be impossible for a jury to logically
distinguish which rape was aggravated by the kidnapping, the
sentences would not match the severity of the crimes.  The
second through tenth rapes would have been no less terrifying or
harmful to the victim, and each would have occurred during the

---

[3] The felony-murder rule likewise "applies to killings that
occur 'in the commission of' the underlying felony," McCourt,
supra at 494, quoting G. L. c. 265, § 1, so that a single felony
may support multiple murder convictions.  See, e.g.,
Commonwealth v. Rakes, 478 Mass. 22, 23, 33 (2017) (two murder
convictions predicated on single felony of armed robbery).

commission of a kidnapping. Thus, even though every element under G. L. c. 265, § 22 (a), would have been established ten separate times, the perpetrator could be punished for aggravated rape only once. The Legislature did not intend such anomalous results. See McCourt, 438 Mass. at 493.

Moreover, this case is not the first instance where a single aggravating factor supports multiple convictions under G. L. c. 265, § 22. See, e.g., Commonwealth v. Pearson, 87 Mass. App. Ct. 720, 721 & n.1 (2015) (affirming convictions of five counts of aggravated rape supported by four predicate kidnappings); Commonwealth v. Coleman, 30 Mass. App. Ct. 229, 234 (1991) (jury could have found defendant perpetrated "at least two rapes as part of a joint venture and that the essential elements of G. L. c. 265, § 22 [a], had been established"); Commonwealth v. Madyun, 17 Mass. App. Ct. 965, 965 (1983) (affirming conviction of four counts of aggravated rape predicated on one count of armed robbery).

The record here shows at least sixteen penetrations that occurred during the commission of multiple kidnappings, multiple acts of burglary, and multiple assaults and batteries by means of a dangerous weapon -- all aggravating offenses enumerated under G. L. c. 265, § 22 (a). As recognized above, because each aggravating factor may support multiple aggravated rape

convictions, the facts admitted to at the plea colloquy establish (at least) eleven aggravated rapes.

We also conclude that there were no duplicative convictions to warrant the withdrawal of the defendant's guilty pleas to any of the lesser offenses. Convictions of aggravated rape and of a charged predicate crime may stand so long as there are aggravating factors beyond the charged predicate offense. See Commonwealth v. Wilcox, 72 Mass. App. Ct. 344, 347 (2008) (aggravated rape conviction not duplicative of kidnapping conviction where jury found two additional aggravating factors). Contrast Commonwealth v. Donovan, 58 Mass. App. Ct. 631, 632 n.1 (2003) (vacating duplicative kidnapping conviction wholly included in aggravated rape conviction). Cf. Commonwealth v. Rivera, 464 Mass. 56, 81, cert. denied, 570 U.S. 907 (2013) ("Where, as here, the jury identify an uncharged crime . . . as the predicate felony, there is no risk of a duplicative conviction or sentence on that crime"). Given the number and the ongoing nature of the offenses committed throughout the assault here, the facts admitted to at the plea colloquy supported a conclusion that each aggravated rape conviction was supported by an uncharged aggravating offense. See id.[4] Cf.

_____

[4] The defendant's aggravating offenses in this case include numerous acts that were not charged in the indictments. (For example, a second burglary occurred when the defendant reentered the victim's apartment to bind and gag her, and the initial

McCourt, 438 Mass. at 493, 496 (statute defining aggravated rape is sufficiently broad to predicate conviction on assault either preceding or following rape); Brown, 66 Mass. App. Ct. at 243 ("the offense of aggravated rape also may encompass a confinement of the victim that takes place after the rape itself, but during the same criminal episode").

4. Ineffective assistance of counsel at sentencing. "Ineffective assistance of counsel requires 'behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer,' which 'likely deprived the defendant of an otherwise available, substantial ground of defen[s]e.'" Ubeira-Gonzalez, 87 Mass. App. Ct. at 44, quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "[S]entencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel." Commonwealth v. Lykus, 406 Mass. 135, 145 (1989), quoting Gardner v. Florida, 430 U.S. 349, 358 (1977). When making a

---

confinement in the victim's apartment and subsequent asportation and confinement in the second apartment were separate acts of kidnapping [among others].) An aggravated crime may be supported by an uncharged predicate. See Commonwealth v. Petrillo, 50 Mass. App. Ct. 104, 110-111 (2000), cert. denied, 532 U.S. 1030 (2001) (aggravated rape could have been predicated on separate, uncharged kidnapping, but judge failed to so instruct jury). Cf. Commonwealth v. Phap Buth, 480 Mass. 113, 119 (2018), quoting Commonwealth v. Stokes, 460 Mass. 311, 315 (2011) ("the felony on which a charge of felony-murder is premised may be uncharged, so long as the evidence supports it").

claim of ineffective assistance of counsel at sentencing, the defendant has the burden of showing "that he would have received a lighter sentence had his counsel conducted himself any differently at sentencing." Commonwealth v. Fanelli, 412 Mass. 497, 503 (1992). Accord Commonwealth v. Giannopoulos, 34 Mass. App. Ct. 937, 938 (1993), quoting Commonwealth v. Mamay, 407 Mass. 412, 425 (1990) ("In the absence of a showing that a different result might have been attained, we cannot say that counsel's performance was ineffective"). In reviewing plea counsel's tactical decisions during the sentencing hearing, we consider whether counsel's tactics were "manifestly unreasonable." Commonwealth v. Kolenovic, 478 Mass. 189, 193 (2017), quoting Commonwealth v. Degro, 432 Mass. 319, 332 (2000).

Here, defense counsel offered a lengthy, detailed sentencing argument, taking up more than nine pages of transcript, nearly three times as long as the prosecutor's argument. Contrast Lykus, 406 Mass. at 138, 144-146 (counsel's five-sentence argument at sentencing was ineffective); Commonwealth v. Cameron, 31 Mass. App. Ct. 928, 930 (1991) (sentencing argument consisting solely of "we place ourselves at the mercy of the court" was ineffective). Counsel recounted the physical abuse the defendant suffered from his father and the sexual abuse the defendant suffered as a child, and suggested

these were the causes of the defendant's anger issues. He argued that the crimes were the product of the defendant's problems with drug use. He stated that the defendant had no prior history of sexual offense. He stressed the defendant's loving relationship with his daughter. Finally, he suggested that the judge need not give a lengthy sentence, because the defendant would be subject to community parole supervision for life and to commitment as a sexually dangerous person, "unless the [prosecutors] have an extremely good reason for not doing so, such as remarkable improvement by him during his jail term." Counsel argued that these last two factors meant that, if the defendant were ever released, "he's simply not at that point where he would be a danger to society." Contrast Osborne v. Commonwealth, 378 Mass. 104, 113 (1979) (counsel failed to present any mitigating factors other than defendant's alcohol use but instead prayed for victim).

Counsel also presented the judge with a sexual offender evaluation of the defendant reinforcing these themes. It stated that the defendant "takes full responsibility for the sexual assault against his victim" and that the defendant asserted he had not committed any other rape (charged or uncharged). The evaluation recounted the physical abuse from his father and the sexual abuse that the defendant suffered as a child. The evaluation described the defendant's problems with drug use.

The evaluation described the defendant's noncriminal sexual interests and his lengthy relationship with the mother of his daughter. Finally, the evaluation concluded that the defendant had a "[h]igh moderate level of risk to re-offend" and a "[l]ow to [m]oderate risk to reoffend sexually," and made numerous recommendations to reduce those risks.

There was, no doubt, some risk in counsel's tactic of exposing the horrors of the defendant's childhood and in arguing that the possibility of commitment as a sexually dangerous person permitted a shorter sentence. In light of the horrific nature of the crimes, however, we cannot say that this strategy was manifestly unreasonable -- or even unsuccessful. See Commonwealth v. Caputo, 439 Mass. 153, 169-170 (2003) (where judge was aware of mitigating factors, "defense counsel's decision to offer a brief explanation of the defendant's situation was not unreasonable"). See also Commonwealth v. Wilson, 443 Mass. 122, 140 (2004) (counsel not ineffective where "the brutality of the murders and the defendant's criminal history would have overshadowed" mitigating factor).

Similarly, we see no ineffectiveness in counsel's failure to produce additional mitigating evidence. As stated, counsel presented considerable mitigating information, such as the defendant's childhood, his lack of previous sexual offenses, his remorse, and his loving relationship with his daughter. With

his postconviction motion, the defendant submitted numerous letters that he suggests could have been presented at sentencing.  Much of the content of those letters, however, recounts the defendant's commendable progress in the years since sentencing, and thus was unavailable to plea counsel.  The information that would have been available at sentencing discussed the defendant's childhood, problems with drug use and anger, and loving relationship with his daughter and his siblings.  As these mitigating factors were all brought to the plea judge's attention, the defendant has not shown that he would have received a lighter sentence if counsel had acted differently.  See Mamay, 407 Mass. at 425 ("the judge was exposed to a number of potential mitigating factors"); Giannopoulos, 34 Mass. App. Ct. at 938 (defendant failed to show that, "had [testimony] been offered, [it] would have made a significant difference in the result").  Contrast Lykus, 406 Mass. at 144-145 (counsel ineffective where, inter alia, he failed to present evidence of four mitigating factors).  Accordingly, the defendant has failed to show that counsel was ineffective at sentencing.

5.  Ineffective assistance of counsel in advice regarding plea.  Where, as here, "a claim of ineffective assistance is directed to counsel's representation incident to a guilty plea, the second prong of the Saferian test requires a defendant to

show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Commonwealth v. Pike, 53 Mass. App. Ct. 757, 762 (2002), quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985). In this regard, the absence of an affidavit from plea counsel, without a description of unsuccessful attempts to secure such an affidavit, is conspicuous. See Commonwealth v. Hiskin, 68 Mass. App. Ct. 633, 640-641 (2007). Contrast Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 551 (2014) (defendant may defeat adverse inference from absence of plea counsel affidavit by filing "affidavits attesting to plea counsel's lack of cooperation"). Instead, the defendant's claims of ineffectiveness prior to the sentencing are supported only by his own affidavit and the fact that plea counsel was suspended indefinitely from the practice of law five years after the plea.[5] The defendant has failed to meet his burden of showing ineffective assistance of counsel.

First, the defendant has failed to demonstrate that any conduct by counsel rendered his plea unintelligent or

---

[5] Counsel was disciplined for misconduct relating to several civil matters. This misconduct was unrelated to counsel's representation of the defendant and had no bearing on counsel's conduct in this matter; neither does it demonstrate any prejudice as a result. See Commonwealth v. McGuire, 421 Mass. 236, 238-240 (1995). Cf. Commonwealth v. Dahl, 430 Mass. 813, 818 (2000) (no prejudice resulted from other demands on counsel's time).

involuntary. See Ubeira-Gonzalez, 87 Mass. App. Ct. at 41. The plea judge informed the defendant twice that he faced no less than twenty-five years in State prison for kidnapping and sexual assault, and likewise informed him of the maximum sentences attached to the other charged offenses. The defendant repeatedly affirmed his understanding of the charges and the consequences he faced in pleading guilty. He affirmed that defense counsel had described the elements of the charged offenses, fully discussed the case and the consequences with him, and explained the defendant's options available through trial. Moreover, the defendant affirmed that no one, including his attorney, had forced, threatened, or otherwise induced him to plead guilty. See Commonwealth v. Bolton, 92 Mass. App. Ct. 469, 474-475 (2017) (rejecting ineffectiveness claim where defendant stated he understood sentencing and made guilty plea without pressure or coercion). The motion judge was not required to credit any claims to the contrary in the defendant's self-serving affidavit. See Commonwealth v. McWilliams, 473 Mass. 606, 621 (2016). Accord Commonwealth v. Lys, 91 Mass. App. Ct. 718, 722 (2017) ("the absence of an affidavit from the defendant's plea counsel without an explanation why such an affidavit could not be obtained is a negative factor in the assessment of the credibility of the affidavit submitted by the defendant"); Ubeira-Gonzalez, supra at 41 (defendant's "own

self-serving affidavits" insufficient to support motion to withdraw guilty pleas).  Without credible evidence otherwise, the defendant's statements at colloquy are conclusive of the validity of his guilty pleas.  See Bolton, supra (defendant's sworn statements at colloquy determinative over self-serving affidavits on motion to withdraw guilty plea).

The defendant's remaining claims on the basis of plea counsel's conduct are unpersuasive for the same reason.  See Commonwealth v. Yardley Y., 464 Mass. 223, 231 (2013) (affidavits inadequate to support defendant's assertions on motion to withdraw plea).  There is no credible evidence to establish anything "manifestly unreasonable" about counsel's advice in this case.  Commonwealth v. Lang, 473 Mass. 1, 14 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006).  To the contrary, it was indisputable that the defendant was guilty of the assault described at sentencing, and the defendant gave his express approval of counsel's representation.  See Bolton, 92 Mass. App. Ct. at 474-475.  Given the severity of the charges and the strength of the Commonwealth's case, there is nothing beyond his own affidavit to suggest the defendant would not have pleaded guilty but for counsel's conduct.  See Pike, 53 Mass. App. Ct. at 762-763.  The defendant failed to raise a "substantial issue" on the matter and is not entitled to an evidentiary hearing.  Bolton, supra at 475 n.8.  Accordingly,

the defendant is not entitled to withdraw any of his guilty pleas; nor is he entitled to resentencing for his convictions.

6. <u>Conclusion</u>. The order denying the defendant's motion to withdraw his guilty pleas and for resentencing is affirmed.

<u>So ordered</u>.